Bell D. POOLE, et al., Appellants,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Appellee.

No. 17876.

Court of Appeals of Texas, Houston (1 Dist.).

Feb. 11, 1982.

Rehearing Denied May 27, 1982.

William A. Odom, Zinetta Burney, Houston, for appellants.

Sewell & Riggs, Gordon A. Holloway & Claude Treece, Houston, for appellee.

Before EVANS, C.J., and DOYLE and WARREN, JJ.

DOYLE, Justice.

This is a wrongful death action.

This suit was brought to recover damages for the deaths of the driver and passenger of an automobile that was struck by a train owned and operated by the Missouri Pacific Railroad Company (MPRC). There was evidence that the driver of the automobile, proceeding in an easterly direction, could not see the approaching train because her view was obscured by a cement mixer tank, which once comprised the back of a cement truck. This mixer tank was on MPRC's right-of-way on the west side of the railroad track near the crossing.

The jury found that the crossing was extra hazardous and that MPRC's failure to install automatic signals was negligent and a proximate cause of the accident. The jury also found that the driver had failed to stop her car within the distance required by statute from the nearest rail of the railroad track and that she had proceeded across the tracks when a person of ordinary care would not have done so. The jury proportioned the driver's negligence at 30% and MPRC's negligence at 70%. Based on the jury's findings and verdict, the trial court entered judgment for appellants in the amount of $201,561.60. Additionally, the jury found that MPRC was grossly negligent in failing to have an automatic signal at the Tamina crossing and awarded appellants $120,000 in exemplary damages as a result. The trial court ruled that it could find no evidence to support the jury's findings of gross negligence and award of exemplary damages, and entered a judgment notwithstanding the verdict, setting aside those findings. The appellants bring this appeal, complaining only of the trial court's judgment n.o.v. with respect to the jury's findings of gross negligence and exemplary damages.

In three points of error, the appellants complain of the trial court's ruling with respect to the issues of gross negligence and exemplary damages, arguing that there was evidence to sustain the jury's findings of gross negligence, and that certain correspondence termed the "Denton letters" should have been admitted in evidence to show that MPRC knew, or should have known, that the crossing was extra hazardous.

The principal question raised by the appellants' points of error is whether there is some legally sufficient evidence in the record to support the jury's finding that (1) the railroad crossing was extra hazardous; (2) that MPRC's failure to have an automatic signal at the crossing was negligence; and (3) such failure was heedless and reckless disregard of the rights of others affected by such failure.

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex. 1981), the Texas Supreme Court extensively reviewed the development of the gross negligence concept in Texas and approved the definition of gross negligence laid down in *Missouri Pacific Ry. Co. v. Shuford,* 72 Tex. 165, 171, 10 S.W. 408, 411 (1888) as follows:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it.

The Texas Supreme Court then examined the standard of review of cases involving jury findings of gross negligence and, through Justice Spears, stated:

> In testing a jury finding of gross negligence, the same no evidence test should apply as to any other fact issue. The plaintiff has the burden to prove that the defendant was grossly negligent. If the jury finds gross negligence, the defendant has the burden of establishing that there is no evidence to support the finding. The "some care" test utilized in prior workers' compensation cases improperly reverses that burden. Under the "some care" test the defendant, instead of proving there is no evidence to support the verdict, would show there is some evidence that does not support the jury finding of gross negligence, i.e., entire want of care. The burden is thus shifted to the plaintiff to negate the existence of some care. This is almost an impossible task since anything may amount to some care. Moreover, the "some care" test does violence to the rule for testing the legal insufficiency of the evidence which requires that only the evidence viewed in its most favorable light and tending to support the jury's finding may be considered. The jury, after all, does not have to believe evidence that "some care" was exercised. When there is some evidence of defendant's entire want of care and also some evidence of "some care" by the defendant, the jury finding of gross negligence through entire want of care resolves the issue, and the appellate court is bound by the finding in testing for legal insufficiency. 616 S.W.2d 911, 920.

The Texas Supreme Court further explained that the same acts forming a basis for ordinary negligence may establish gross negligence, depending upon the mental attitude of the defendant, i.e. in order to prove gross negligence the plaintiff is required to show that the defendant was knowingly indifferent to the plaintiff's rights, welfare, and safety. The court further stated that all circumstances indicating a state of mind amounting to conscious indifference should be examined to determine if there is some evidence of gross negligence. Quoting from *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex. 1970), the court said: "In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor." 616 S.W.2d 911, 922.

■ Applying the standard of review set forth in *Burk,* it is appropriate to consider that evidence in the record which is favor-

able to the jury's findings of gross negligence.

The officer investigating the accident testified that the concrete tank was 17'9" from the railroad crossing at a distance of 24'6" south of the edge of Tamina Road. MPRC's general manager since 1967 had been on investigative trips at the Tamina crossing on several occasions prior to the accident and observed the cement tank on both trips. He did not consider the tank a hazard, but he did not measure the height of the tank or its distance from the crossing, and he knew the tank was located on MPRC's property. He testified that no attempts had been made to move the tank or to notify any personnel of its presence.

The plaintiff's expert witness with respect to railroad crossings testified that he had measured the height and width of the tank and its distance from the crossing and had measured what the decedent's eye level would have been in a vehicle similar to that involved in the accident. In his opinion the hedgerow and the tank constituted a definite obstruction to the decedent's vision. The Tamina crossing was on a main line of the railroad. A main line, as distinguished from a branch line, is a line that connects major towns and is heavily traveled. Several witnesses, who were also familiar with the crossing as motorists, testified that the cement tank constituted a definite obstruction to a driver's vision on the date the accident occurred.

From the evidence presented, the jury was entitled to infer that MPRC had knowledge of the potential danger which the cement tank posed to motorists traveling across its railroad crossing, and that it was consciously indifferent to the rights, welfare and safety of such persons affected by the danger. Thus, the record contains some evidence of probative force on which the jury could have based its findings.

Before a trial court can render a judgment *non obstante veredicto* based upon the absence of evidence, it must determine that there is no evidence of probative force upon which the jury's findings could

be based. *Whiteman v. Harris,* 123 S.W.2d 699 (Tex.Civ.App.—Fort Worth 1938, writ ref'd. n.r.e.). Therefore, it was error for the trial court to enter the judgment *non obstante veredicto,* and the appellant's third point of error will be sustained. The disposition of this point of error renders it unnecessary to consider the appellant's first two points of error.

On July 28, 1981, nine days before submission, MPRC filed a supplemental brief without first securing leave of this court to do so. This brief contained several cross-points of error not contained in its original brief. The case was set for oral argument on August 6, 1981. This brief is ordered stricken, and the points of error presented therein will not be considered. *Leinert v. Sabine National Bank,* 541 S.W.2d 872 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.), Rule 431, T.R.C.P.

The trial court's judgment awarding actual damages to the plaintiffs is affirmed, and that portion of the judgment rendered *non obstante veredicto,* setting aside the jury's findings of gross negligence is reversed, and judgment is here rendered that plaintiffs Andre Smith, Otis Smith, Albert Smith and Kerry Smith recover the amount awarded by the jury as exemplary damages.